Comara v. Attorney General May it please the Court. My name is Ingrid Johnson. I'm from the law firm of Drinker, Biddle & Reith, and I represent the petitioner Ayuba Comara. I'm here today because we are here to talk about the 2014 standard. I'm here today to talk about the 2014 standard and the IJ who misapplied the standard for social distinction as well as for reasons related to their fact fund, for the IJ's fact funding. Do you think that we should grant Chevron deference to the 2014 articulation of what is entitled to Chevron deference? Because it's essentially a Wittgensteinian exercise in what is... I don't know what that means. So, you know, we have to look at how they're applied practically. And if you look at the case here, the way the judge articulated those distinctions was by... The question isn't what happened here. You need to, please, because this was the question that's being put to you is, we've got the two cases from 2014 that the DIA came out with, the WGR and the MEVG case. Why are those cases, which set forth the three-part test that's modified after our opinion, why are those cases not entitled to Chevron deference? I'm not sure that they're modeled after the decision in Valdoviso. I think that they continue to just recycle the same distinction, which is that it needs to be social visibility. It's just under a different name. And that's what I meant by sort of this philosophical analysis. But with the concern, and certainly with Judge Hardiman's concurrence, the concern that they came to motivate all three members of the panel was that there was not a principled reason, there was not a reasoned explanation that had been given for what appeared to be a departure from prior practice. The DIA then provided an explanation and also addressed why, in retrospect, it was not, it could be viewed as not a departure from prior practice, at least as to the outcomes in those cases. Since they responded to those concerns, why don't we now give Chevron deference? Well, I don't believe that they did, because it doesn't provide sufficient guidance for the fact-finders on how they can view social deference. And the reason I brought it back to this case is that you look at the opinion of the IJ in this case, and he uses the term view. Even though the court, this court, told the DIA that they needed to remove the visibility standard, it's still being applied. Are you sure that that word view couldn't be understood to mean society perceives this particular collection as being a defined group? That's the exact conundrum, is that whether you view or perceive, it's the same thing. It's societal perception. It's not based on, I think, the language in some of the opinions is ocular. It's not what I visually look at. It's whether society has accepted a particular group as being distinct. Isn't that what societal distinction, social distinction component means? And isn't that your challenge in this case, is whether or not you have evidence to show those who report or oppose gang activity are socially distinct within the community in the Ivory Coast? I think that's certainly an aspiration of these decisions, NGV and NEVG. I apologize if I got the NGV wrong. NEVG, N-E-V-G. Thank you. I know, it's E-I-E-I-L. It gets tough, but those are the two cases. I believe that that's the aspiration, but I think that the way we look at visibility, it's nearly impossible to prove in a case such as my client's case, even though he did everything right. He didn't. Well, he didn't come forward with evidence except his own testimony had some evidence of press reports that they actually arguably cut against him. I mean, there are ways to get actual evidence to demonstrate that in the society at issue here at the Ivory Coast, there is a societal acceptance or a perception that the group you're advocating is indeed recognized as a group. That's the point. It's possible to demonstrate that kind of thing with evidence. I think there's several layers to that question. I'll address the first, which is that he did not provide corroborating evidence. He provided three affidavit sworn statements demonstrating that he alone was selected for this violence. I thought he actually said something quite the contrary, that the violence was indiscriminate. If I remember him, he said something along the lines of, only God can save you, right? I mean, wasn't it some kind of words to that effect that the microbes there just don't kill anybody? I think, well, I know that he is Muslim and he speaks that way to me many times in broad terms about God saving someone, but I also think that the testimony that the additional affidavits showed that this was a targeted attack and that he was, by standing up against this group, he was now viewed as potentially a victim. But he was viewed by the alleged persecutor. The question is, does society, does the Ivory Coast society recognize those who report or oppose gang activity are a distinct group? Because I understand what you're saying, that the persecutors identified him because of what they perceived he did, but that is not the question. The question is, does society? Yeah, I think that's very hard. I don't think that a perception is equivalent to universal knowledge. Certainly not everyone knows that he did this, but I think that there is a belief that if you, I think the articles show that if you stand up against this gang, you can be killed. Where do you make the argument? The government has raised the point that it appears if you don't agree that an EVG and the standards that are articulated can't stand, that you forfeited an argument as to whether the PSGs here meet the criteria of social distinction and particularity. Because you don't argue them in your opening brief. What I argue in the opening brief is that the standard was not adopted by this circuit, so we don't need to argue that standard. If you take that position and you did in your opening brief, you argued exclusively on Acosta, why is it not the case that you are not allowed to argue, you just can't make arguments now, that if we disagreed with you about Acosta, that you've put forward sufficient evidence to meet the socially distinct and particularity tests that are in MEVG and EVGR? I'm just going to ask. I apologize for making that a long question. It's basically what Judge Krause just asked. If you only argued Acosta in your opening brief, why aren't you limited to arguing Acosta now? Why should you be heard to make arguments about why you would still meet the three-part test that's set out in MEVG and WGR? Well, I think we recognize that it's our position that that is the standard. And we have said in our reply brief that even if MEVG and MGR are the applicable standards, he's met them. So you think you're okay, you've preserved it by arguing it in your reply brief is your position. It's not perfect, but we do take the position that this is not the standard adopted. And that's what the case law says. Okay. Did the BIA address whether your proposed social groups meet the Acosta test? No. All right. So the BIA's decision was focused on a particular social group? As to that issue, yes. Right. So even if we were to agree with you that Acosta is the standard, the result here would be, what, a remand for them to consider Acosta in the first instance? Yes. A fact-finding remand. Okay. And as to the other issues of fact that were not addressed properly. Can you help us understand what is your proposed PSG? The concept of individuals who denounce criminal acts performed by gang members. What does that mean? Is denouncing different than reporting? I would say it includes basically standing up and taking a personal risk to stop gang violence. So what then is, does that PSG absorbs your second proposed PSG? If denouncing includes reporting and your second PSG is reporting, how are those really different? You know, I think that there are different ways of saying it. I mean, reporting means going to the police and denouncing means standing up and speaking against it. I think the government is not highly functioning in the Ivory Coast, so it's very difficult to make clear distinctions as to what is reporting and what is denouncing. I'm sorry. Doesn't that create a problem for your particularity prong then? If the definition is so loose that it's hard to know who's in and out, by definition, doesn't that constitute a particularity problem? If the definition is too loose, yes. But from what the right... I thought I just heard you say it's tough to make a distinction between denounce or reporting. The whole point, I take it, of the particularity prong of the BIA's test is that it has to be particular enough that you can define it. If you can't define it, then you don't have a group, a particular social group. So if you can't say who's in and out based on what you're describing, don't you fail the particularity prong? Yes, but we don't believe that's the correct standard under Malavisa. Okay, because you believe it's a cost and a cost alone. Yes. Have you found any circuit case where a group defined either as opposing, denouncing, or reporting gang activity has been recognized? Yes. And I'm distinguishing from people who have testified, okay? Yes. I believe, and I don't have... I believe the matter, it starts with an A. It's a Honduran man, I believe, and it was decided by this circuit in 2017. Okay. An additional question, going back to something we talked about earlier, even under your...assume we got past the particular social group and we were asking about past persecution and we were asking about well-founded fear. How is it the case that he can be... Let me just focus on well-founded fear for a moment. That he can say he has a well-founded fear of future persecution when he himself has never been subjected to violence and he relocated his family and they are safe? Given those two things, how can he be said to have a well-founded fear of future persecution? Well, I don't think relocation of your family is a standard for fear of future persecution. I think it's a standard for whether you can relocate. Yeah, but doesn't it...isn't it in fact part of the idea about well-founded fear that if you can go someplace in your country where you're safe, you don't have a well-founded fear of persecution? Well, maybe his family can go somewhere without... Precisely, not only could they, they have. That's the point. They've gone, they've been safe. Why doesn't that undermine your argument about well-founded fear? Well, I don't think it's the dispositive line of questioning. I think it's a factor. Certainly, he got immediate threats upon... After his brother was attacked, he got threats on the phone. Threats alone are enough to show a well-founded fear. And this was something that he... He was willing to... He believed that he was not going to survive. Okay. Anything further? No, thank you. Okay. Thanks very much, Ms. Monaco. Good morning, Your Honors. May it please the Court, Carrie Monaco representing the Attorney General in this case. The first issue the Court should decide is whether the Board's particularity and social distinction requirements as set forth in matter of MEVG and WGR are reasonable interpretations of the term particular social group. One of our concerns in WGR was that the two terms seem to overlap completely. Can you explain how it is that particularity is different than social distinction? And any... Is there a PSG where one is satisfied and not the other? Or are they succeeding or failing in tandem? Sure. The requirement for particularity and social distinction look at two separate things related to the group. For particularity, what the Court should be focusing on is whether there are boundaries to the group. Do we know who belongs inside of this group? Then for social distinction, you would look at whether that group of people is seen as distinct in some way within the society. To answer your second question about examples, I came up with a couple where a group might meet the particularity requirement but not social distinction and vice versa. These are my examples, not necessarily from case law, but just to give examples of the concepts of particularity and social distinction. For a group that may be socially distinct but not particular, one example could potentially be wealth, where if there were evidence in the record that wealthy people were seen as somehow distinct or different from the rest of the population, it might meet the social distinction requirement, but it might fail the particularity requirement because you don't know exactly what wealth means. It may mean different things to different people and where exactly you draw the line. So the lines on the end are fuzzy. On the other side of the coin, for a group that is particular but not socially distinct, I don't know why anyone would persecute on this ground, but let's say people age 32, for example. We know exactly who is in that group. It's very clearly defined, but it would be unlikely that there's any evidence in a particular country that people age 32 are set apart from society in some way. If we were to agree with the other side here, that the test is a cost, it's not what the BIA has said because we didn't think they'd done enough in the light of what we had already remarked on our Valdezzo case, has the government forfeited its arguments with respect to past persecution and well-founded fear of persecution? Because I didn't see the government took those things on. No, we didn't take those things on because they weren't decided by the agency. So it's our position that the court, if they disagree on the particular social group question, it should go back to remand for the board to address those findings that it did not. So past persecution, the ACOSTA standard, which the board did not previously decide. Under general Chenery principles, we think that remand would be appropriate for the board to address in the first instance all of those other questions. If we can go back to when you took the podium, you were going to explain to us why you think we should give Chevron deference to the 2014 recitals by the BIA. Yeah, I think that in MEVG and in WGR, mostly MEVG, the board did a good job of providing reasons as to addressing the court's concerns from Valdezzo. So first the board explained that social visibility was not literal visibility, and then went on to explain the distinction between particularity and social distinction and how those two operate separately. If that's the case, if what they did was just explain what they had done before, how did that meet Valdezzo's criticism that in fact the test, that three-part test, produced unreliable and conflicting results? What it did was it explained how it clarified the test that it had evolved over time and explained why the board needed to evolve and clarify its test over time based on the cases that it was seeing, and then also provided reasoned explanations for how this test would have resulted in the same or would have created the same results in prior cases. Okay, you're getting at what I'm trying to ask. One of the criticisms leveled at the BIA's approach pre-MEVG was, excuse me, pre-MEVG, I'm getting my WGR and my MEVG mixed up. One of the criticisms leveled was your test produces inconsistent results. It is not a rational test because it can just allow any old thing to happen. If in MEVG what the BIA actually said was, well, look, we're just going to clarify, we're not changing anything, we're just clarifying and going to continue to do what we've done, how does continuing to do what had been done meet the criticism that the test produces inconsistent results and is therefore flawed? Well, I think what the board was acknowledging in MEVG is that in its prior cases, it hadn't really fully developed and explained what all of these different criteria meant and how they are to operate. And so to the extent that there may have been inconsistent results or unclear results, what they're doing in MEVG is clarifying exactly how these criteria are supposed to operate, how the results would end up the same under this other prior precedent, how it would end up the same and how we should be looking at it going forward and the distinctions between the three different requirements as well as why they're necessary. With the supposed clarification, with WGR, we have former gang members are not sufficiently particular or socially distinct. They have different ages, sexes and backgrounds. How is that consistent with or how can it be reconciled with former members of the National Police Force or, for that matter, humans who are homosexual or the other protected categories, things like religion, race, political opinion? So is your question specifically about how former gang members are just different? Which is a different result? If a difference in age or sex or background is what makes a group unable to meet the PSG category, how do you make that consistent with the Board's prior rulings and how is it consistent if we're going to apply the canon of the just and generous, how is it consistent with the treatment of the other protected categories? Well, I think you have to look at the specific claim being made in the particular case as well as the society in question to understand exact... I mean, it does... The particular social group requirement does work in tandem with the nexus requirement and so you need to look a little bit at both to understand exactly what the claim is to understand what is the group that the person is claiming to be a part of. And when you look at, you know, former gang members just generally claiming that they might be targeted, there are so many different scenarios that somebody could fall into within that category versus a general claim, a more general claim of homosexuals in Cuba when there is documentary evidence about how that particular group of people, regardless of age and background, is treated in that particular society. The position seems clear enough. Someone who was a member of a gang and no longer is. How is it a consistent approach to decision-making that someone who formerly was a police officer and now no longer is, that that can be a PSG and someone who was a member of a gang and no longer is can't? Why is one more particular than the other? Well, what the court noted about the policeman, and I do just want to, or what the board noted with respect to the policeman in El Salvador, I assume you're just referencing the Fuentes case. What the board said in MEDG about Fuentes, and which is clear from the Fuentes decision, is Fuentes is not necessarily holding that former policemen in El Salvador are exactly a particular social group. What they were holding in Fuentes is that it might be and was deciding on the nexus question. And so it was not fully fleshed out. The law does not appear to support that reading. And if we have a concern about revisionist history, CA, the board itself, describes what it did in Fuentes as identifying the PSG of former police officers. If we are to take from MEDG that the board is now trying to recast that as not even identifying a PSG in order to make its jurisprudence appear consistent, doesn't that just point up the problem? I mean, I recognize Your Honor's point about the different interpretations of Fuentes. I went back and read Fuentes, and it does read to me as a nexus-based case. I mean, it's certainly leaving the door open and acknowledging that former police officers may be a particular social group, but we'd have to go back and look at it using particular standards to compare. So if it were the case that was treated as a particular social group, do you at least agree that it's hard to reconcile that with the assertion that former gang members are not a particular social group? Because if you can say, I'm a former cop, and that works, but not I'm a former gang member, how can that be a consistent application of the law? But I think you'd have to look at the specific evidence in the record with respect to, especially with the social distinction requirement. How does the society view these particular groups? It's a different issue, right? This is a particularity question. On the one hand, Fuentes... I tend to agree with you. I think Fuentes was a nexus case, and it was not a case about a particular social group. They just said it could be. But it's been treated, including in the Seventh Circuit and in this court, and now by the BIA itself, as a particular social group case. So if we take that as in fact being a particular social group case, how can you square the particularity discussion, or how it's been interpreted in later cases about Fuentes, with the assertion that former gang members aren't a particular enough group? That's a tough circle to square, isn't it? Yeah. I mean, just off the top of my head, I'm just thinking about the types of claims that you'd make in those two scenarios, where if one is claiming just by being affiliated in any sense with being a member of the police force is what's causing them to be a target, that's a little bit different than saying that you were of any level of involvement with a gang. I mean, you may only be a target. So is the distinction between someone who upholds the law and someone who violates the law, society's going to recognize or give more credence to a discrete group that upholds the law as opposed to someone who violates the law? I mean, that's certainly possible. That's going back to the social distinction requirement. But in terms of particularity, the level of involvement in a gang may be relevant based on the particular claim that the individual is making. Well, let's focus on one of the two particular social groups alleged here. And why isn't it particular enough to say that people who report gang violence are not a particular social group? You can say, you know, there's historical facts there. They either witnessed gang violence or they didn't, and they either reported it or they didn't. And if the answer is, I saw it and I reported it, at least that's the particularity. Why isn't that just as particular as a historical fact like, I used to be a cop? Well, we look at the record evidence in this case, and we see that most of the society in Ivory Coast object to these gangs in some way. And the evidence shows that there are different ways in which people have responded. They may object to it, but do they have the courage to report it? That's the point. I take the argument from Mr. Komar's counsel to be, in effect, this. There are few people who have the courage to stand up and say, I witnessed this violence, and I can identify these people, and you need to stop them, police. Because people are worried that if they do that, somebody with a machete is going to come to their house and take their head or the head of their children or somebody else they love. So there's a very particular group, and it's not the whole society. It's a pretty narrow group who've got the guts to do it, and you can tell they've done it because there are certain historical markers. They saw violence. They reported violence. So my question to you is, why isn't that particular enough? If it's not, explain what would make it more particular than historical facts. I saw crime. I called the cops and reported crime. Well, even looking back at the gang case using WGR as a guideline, reporting crimes to the police could vary depending on how much information they have. Are they actually assisting the police? Are they assisting in prosecutions of the witness? These are just things to consider, but I will acknowledge the particularity question is a little bit more difficult on that particular social group that is proposed, but I do think that we have a very strong argument on how that group is not socially distinct either and so fails also for that reason. How so in a country where the record contains evidence that people are afraid to report and largely don't report and that they resort instead to vigilante justice where there is any response to these kinds of gangs? I'm sorry. Can you repeat? I didn't quite understand the question. The record here includes evidence that as a group, as a society, people are afraid to report, that people instead resort to vigilante justice in cases where they respond at all or they don't report or take any action. So those who do report and have consequences visited on them and their families would appear, given that record evidence, to be an identifiable and different group than the rest of society. I don't think that the evidence supports that, that the society views people who report these crimes to the police any different than anyone else. As you acknowledged in the record, there's information of people handling these gangs in other ways, of protesting against the police for not doing enough. There is some evidence of vigilante justice. So I just don't think there's a separate distinct group of individuals who report to the police. How do we forestall the decisions about PSG and asylum being made on what someone thinks about society generally when there's record evidence that has been presented by a petitioner suggesting that the group is one that is a smaller group from the rest of society and can be defined in a very concrete way? Why isn't that enough to at least establish the PSG component of asylum before you move on to the other questions of nexus? If that record evidence is there, then yes, there would be evidence of a particular social group. There's not that evidence here to show that that group is set apart in any particular way from the rest of society. What evidence does it take? If it's not enough to have a record that reflects that people generally in society are afraid to come forward, that they don't generally report, and to the extent people do respond, it's using vigilante justice instead of reporting to the police. But I don't think there is the evidence in the record to show that people aren't reporting. There is no evidence in the record to show how often these things are reported to the police or not. In fact, the record evidence shows that people have been critical of the police for not stepping up and doing enough, which means that there could be people coming forward to the police feeling like their complaints have not been heard. So it's the petitioner's burden of proof in this case. So you have a burden of proof argument. You've got a burden of proof argument. You're saying the petitioner hasn't met the burden. Can I just follow up on that, speaking of burden of proof on the relocation issue? Sure. I think in your brief you discussed who's got the burden of proof on relocation and a concern that maybe the IJ misstated what the burden of proof is or the BIA. I don't think that the board or the immigration judge misstated the burden of proof, but the burden of proof is on the petitioner so long as he did not prove past persecution on account of a protected ground. So if this court were to reverse on the particular social group question and it would have to go back for a determination on whether Mr. Kamara suffered past persecution on account of a protected ground, it could shift the burden to the government. If there's past persecution on account of a protected ground, there's a presumption that relocation would not be reasonable. And so the burden for internal relocation is directly related to the particular social group question. So if we were to hypothetically conclude even if he were in a particular social group and even if he demonstrated past persecution or a well-founded fear of future persecution, it's your view we have to remand, we couldn't just rely on this record as to whether relocation was reasonable? Yes, because there would be a presumption in place that the government should have an opportunity to rebut. I see. Okay, thank you. Okay. Thank you. Thank you very much, Ms. Monaco. Ms. Johnson, you're about. Thank you. I wanted to let you know that the case that I was referring to before is the case of Aguilar, and that was a 2017 decision that decided that, that recognized that a protected group could be a membership in the social group of persons who have spoken out publicly against, and I'm putting in brackets, and who have expressed favor for vigilante organization. Do you have a citation for that? That is number 16-3921, and 2017 Westlaw 3500058, and the one I just quoted you was at Westlaw Star 5. And you said it was a Third Circuit case? Yes. Thank you. So I think what we just heard is the challenge of why we cannot adopt and have to stick with ACOSTA as far as defining a particular social group. Can we go back to the Aguilar case? Yes. Didn't our court remand to determine if it was a particular social group? It didn't find it was, it remanded. But it found that it was a possibility, yes. Thank you. Go ahead. I'm sorry. It's okay. So I think what we've just heard is that the challenge is that when you, the definitions as was recognized by this court, particularity and social visibility or social distinction can get very merged. In this case, my client has done. I'm sorry. You say social visibility and social distinction have merged? Excuse me. The standards of social distinction and particularity are often merged. Well, I think they may overlap, and the government's conceded that, but I understand their argument to be these test two very distinct things. One is an objective definitional question. Can you describe this group? And the other is a subjective question, that is from the subjective perspective of the society at whole that you're talking about. Is it perceived as a set-apart group, an objective test and a subjective test? We have objective and subjective tests all the time in the law. Why is it inappropriate for the BIA to identify an objective component and a subjective component as they seek to define what is a particular social group? Well, I don't think it's inappropriate to have a subjective component so long as it's supported by the record. Indeed. And whose obligation is it to make that subjective test showing based on the record? Isn't it the applicant, isn't it Mr. Komar's burden to come forward with evidence to demonstrate I am part of a group that the society in the Ivory Coast recognizes as distinct? Yes, and I believe he did that. I think that the lack of reference by the IJ to the supporting affidavits that show how extraordinary this was and how the gang told his neighbors that they wouldn't touch the neighbor, that they were only after him, demonstrates how distinct his position was and the nexus to his social distinction. How about all the evidence? Because there is a lot of evidence in the record of indiscriminate violence and, in fact, what makes the microbes a particularly terrifying gang is that their violence does not seem to have any rhyme or reason to it. I mean, doesn't that undermine the assertion that he's special? I think that's true, but I'm not sure that that's the case. I think the facts show that they came to his house, they told the neighbor that they wouldn't touch him, that he needed to mind his own business, that they were after this one person, that the police told them that they couldn't protect him anymore, and that his relatives also corroborated that, that the police said that they could no longer protect him. Okay. All right, thank you very much, Ms. Johnson. We thank you and your firm for handling this case on behalf of Ms. Romar. Thank you very much. Thank you.